## Joseph Telford, et al., v. James F. Howell, executor, etc.

1. EVIDENCE—*what competent to show business transactions between parties deceased.* The books and papers of a party who previous to the trial had died, are competent to show the business dealings carried on by him on behalf of a person likewise deceased, whose interests left at the time of his death are the subject-matter of litigation.

2. WITNESS—*when incompetent.* A party in interest is incompetent as a witness in his own behalf where the adverse party sues or defends in a representative capacity.

Bill to foreclose. Appeal from the Circuit Court of Marion County; the Hon. WILLIAM M. FARMER, Judge, presiding. Heard in this court at the August term, 1904. Affirmed. Opinion filed March 17, 1905.

E. N. RINEHART and W. F. BUNDY, for appellants.

CHARLES H. HOLT, FRANK F. NOLEMAN and L. M. KAGY, for appellee.

MR. PRESIDING JUSTICE HIGBEE delivered the opinion of the court.

This was a suit in chancery by appellee, as executor of the last will of James H. Gray, Sr., deceased, to foreclose a mortgage for $9,000 given by appellants to said Gray, May 7, 1890.

The facts in the case, as they appear from the record, are that at the time of the execution of the mortgage, appellants and said Gray were residents of Marion county, Illinois. Gray was a man of wealth and loaned large sums of money. He was one of the principal stockholders and president of the banking institution of T. W. Haymond & Co., of Kinmundy, in that county. While he was a man who carried on large business transactions and could make accurate mental calculations at figures in large amounts, he had no education. He could read little, if any, and was unable to write more than his own name. His chief adviser in business affairs was T. W. Haymond, the cashier of the bank where he kept his papers and did his business. Haymond drew his papers, looked after them for him, collected his interest and at times made credits on his notes. Gray kept no books of account himself and the only written record of his accounts was that kept by Haymond, who noted on deposit slips and entered in the records of the bank when he received money, a memorandum showing from whom the money was received, for what purpose and how applied.

Appellant Joseph Telford owned a large farm of 920 acres in Marion county. He and Gray did business together for many years; the business usually consisted of transactions in which Telford borrowed money of Gray. They also had certain cattle contracts together under which Gray furnished money to Telford to buy cattle, the money to be repaid to Gray with certain interest agreed upon, when the cattle were sold. On May 7, 1890, Telford and his wife, Laura A., borrowed of Gray the sum of $9,000 for five years, with interest payable semi-annually, at the rate of seven per cent per annum. The several installments of

interest were evidenced by ten interest coupons of even date with the note, for the sum of $315 each. To secure the payment of said principal indebtedness and interest, appellants executed a mortgage on said farm of 920. acres. Gray died October 25, 1901, and shortly afterwards letters testamentary were granted to appellee Howell, as executor of his last will and testament. After his death Howell, his executor, found among his papers said mortgage and principal note with seven of the interest coupons attached thereto, all uncancelled and with no credits on them. The bill in this case was filed in February, 1902.

Upon the trial the court found for the complainant and ordered a decree in accordance with the prayer of the bill. A motion was made by the defendants asking the court to set aside its finding and grant a rehearing of the case on account of newly discovered evidence, which was granted and a rehearing ordered. On January 21, 1904, another trial was had before another judge sitting as chancellor who also found in favor of the complainant and entered a decree against defendants for the amount of the debt, which was found to be $18,464.73, and a solicitor's fee of $200.

In their original answer filed prior to the first trial, the appellants, while admitting the execution of the notes and mortgage, averred that at divers times and places and in divers amounts, they had paid the full amount of money due upon the same. In their amended answer filed after the first trial they set up a settlement alleged to have been had with Gray in October, 1898, when, it is stated, the amount due on the mortgage indebtedness was calculated and found to be $8,289.58 and that Joseph Telford then paid Gray the sum of $4,289.58, leaving a balance due of $4,000, which has since been paid. The efforts of appellants on the last trial appear to have been directed almost entirely to an attempt to sustain the claim of a settlement made in October, 1898, and in this court counsel for appellants say that the decree should have been for the sum of $4,000 with interest at the rate of seven per cent per annum from October 28, 1898, to the date of the

decree and that the court erred in not giving a decree for that amount instead of for the sum of $18,464.73. They also claim that the court erred in admitting certain evidence on the part of appellee and refusing to admit other evidence offered by appellants.

The proofs show that after the execution of the mortgage and prior to the death of Gray, there were many business transactions between them in which Telford received from and paid to Gray large sums of money at different times. It was also shown by the testimony of Z. T. Jackson and E. C. Telford, that they were present at appellants' house on October 24, 1898, when a settlement of some account was being made between Gray and Joseph Telford; that the matter of the farm loan was under consideration and that something was also said about cattle; that Telford gave Gray a check for something over $4,200 and that Gray then said the balance due was $4,000, and that if Telford would do as well on his cattle next year as he had that year, he would pay it off easy enough. E. C. Telford also testified in answer to a question as to whether any other dealings figured in the settlement, "Yes, I think so. I think they figured in something of that kind. We had been pasturing cattle for Mr. Gray and they figured something of that kind. I know they talked about cattle, interest, etc." Neither witness heard all the conversation. Telford's check dated October 24, 1898, indorsed by and payable to Gray for the sum of $4,289.58 was offered in evidence.

To rebut the presumption that the check was given to Gray on the mortgage indebtedness, there was evidence to show that a little more than a year before the time the check was given, Telford had bought ninety-seven head of cattle that Gray was interested in for $41 a head, which at seven per cent interest per annum would amount to about the same amount as the check. There was much evidence to show admissions on the part of Gray that the debt was mostly paid and also acts and admissions on the part of Telford showing he recognized the existence of the debt;

that while the first trial was going on, the witness Jackson lived at Odin a short distance from appellant; that he had been in the employ of Telford a number of years; that he had gone to have a settlement with Telford at the time he claims to have heard the conversation between Telford and Gray above referred to and had been a witness for Gray in other law suits; that E. C. Telford, the other witness to the claimed settlement, was a son of Joseph Telford and resided with him at the time of the first trial; that he knew his father was making a defense to the suit and was worried a little about the matter, but witness never told his father of his knowledge of the settlement or the fact that he was present thereat until after the first trial.

The uncanceled notes and mortgage introduced in evidence were sufficient to sustain the decree of the court had there been no other evidence offered and the burden of proof of showing the settlement was upon appellants. There was evidence on the part of appellants tending to support their claim of settlement and evidence on the part of appellee tending to show that there had been no settlement of the mortgage debt in question. There were two trials of the case before different circuit judges, sitting as chancellors, who both arrived at the same conclusion and a review of the record presents to us no sufficient reason for holding that the finding in favor of appellee was not proper.

Appellants claim that appellee was permitted to introduce in evidence certain bank books, deposit slips and checks of T. W. Haymond & Co. purporting to show transactions between Gray and Telford. As it appears from the evidence that Cashier Haymond, who was accustomed to look after the business matters of Gray at the bank, had died before the first trial of the case, and as the business relations between Gray and Telford were the subject of inquiry, we think the court properly admitted the books and papers in question in order that they might throw all the light possible upon the question of the business transacted between said parties.

Appellants further contend that the court improperly

refused to permit appellant Joseph Telford to testify in relation to certain transactions taking place in the lifetime of Gray. As the suit was brought by the executor of a deceased person, we think the testimony of appellant Telford concerning the transactions above referred to, was properly excluded. The court also refused to admit the testimony of another witness concerning the application Telford proposed to make of certain money which he was trying to borrow after the death of Gray. It appeared that the witness could have no information concerning Telford's intended disposition of the money except such as he derived from Telford himself, and his testimony upon the subject was therefore manifestly incompetent.

The decree of the court below will be affirmed.

*Affirmed.*